JOHN WINN *vs.* EDITH LEVIN.

NOVEMBER 12, 1954.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This is an action of the case to recover damages for the alleged disturbance of lateral support of land owned by the plaintiff. In the superior court it was heard by a justice sitting without a jury and he rendered

a decision in favor of the defendant. Thereafter the plaintiff duly prosecuted a bill of exceptions to this court.

It appears from the evidence that plaintiff and his wife owned jointly a parcel of land in the city of Providence fronting easterly on Quincy street for approximately 50 feet and having a depth of about 100 feet. The defendant owned a lot fronting southerly on Smith street and the back of which bounded for about 45 feet on the southerly side of plaintiff's lot toward the rear. The evidence also showed that the land sloped naturally from the north across plaintiff's lot in a southwesterly direction, descended toward Smith street, and included most of defendant's lot which was at a lower level. The slope dropped about one foot for each four or five feet horizontally. The plaintiff's house was built in 1950. Prior to that date both properties were unimproved and in their natural state. Sometime after plaintiff's house was built defendant erected a house on her lot.

In September or October 1952 defendant had her back yard leveled between the house and the line dividing her property from that of plaintiff. This required considerable excavating because of the natural slope of the land toward the south. The defendant herself directed the work which was done by employees of Raymond V. Skelly, a landscape gardener of thirty-two years' experience including the building of many stone walls and a knowledge of local soils and their characteristics in respect to erosion, slippage and subsidence. The testimony indicates that such excavating caused a vertical drop of approximately nine feet from plaintiff's land to defendant's at a point in the line dividing the two properties where defendant's easterly line met plaintiff's southerly line, which place was within a few feet of the latter's rear door and stoop. Owing to the fact that plaintiff's land sloped toward the west as well as toward the south, the amount of the drop on the above property line became less toward its western end and leveled off to

the natural grade about 40 feet from the above-mentioned high point.

Following the excavating a Connecticut stone wall, so called, between two and three feet high and about six feet from the boundary line in question was built by Skelly on defendant's property at her order. He filled in with earth behind this wall a distance of about six feet to the property line of the parties. The testimony is not entirely clear as to whether the fill was laid merely level with the top of the wall or was sloped up to the property line. If the latter was the case at the highest point there was still a six-foot rise in a six-foot distance. Approximately three weeks later at the direction of plaintiff Skelly built a retaining wall of the same type on plaintiff's land along the southerly line in order to prevent erosion and subsidence from taking place. On top of that wall he erected a fence about five feet high. The plaintiff's claim for damages is based on the construction of such wall and fence.

The bill of exceptions contains several exceptions but we deem it necessary to consider only the ninth which was to the decision of the trial justice. That decision was in general language. It contained among other things a statement that the testimony was not clear on certain points. The trial justice in finding for defendant held in substance that plaintiff had not proved by a fair preponderance of the credible evidence that defendant took away any of his lateral support or that it was necessary for him to build a wall. Such a decision based on conflicting evidence and on the credibility of the witnesses in the ordinary case would have great force. However, in our judgment the circumstances here do not present the ordinary case.

It should be noted that defendant was the person who first changed the natural slope and grade of the land in question by extensive excavation on her property as above described. Further in making his decision the trial justice

did not refer to or discuss specifically the testimony of Raymond V. Skelly. The latter testified for plaintiff, he was the only expert witness in the case who had knowledge regarding soil and grading and, having been employed by both parties, he was apparently a disinterested witness. No one of a like character was presented as a witness on behalf of defendant.

Skelly testified that the soil on the property in question was what is known as hardpan and that prior to the time he built plaintiff's retaining wall, only about three weeks after defendant's wall had been erected, the witness noticed no actual slippage or subsidence of the soil on plaintiff's property. He stated, however, that he had advised defendant to build another retaining wall on her land between the new wall and the boundary line in order to further support the land but that she said she could not afford to do it at that time. In answer to a question relating to lateral support where there was a six-foot rise for every six feet horizontally the witness stated: "Well, after you excavate land, if you don't do something to fix that area when it is as steep as that, it will continue washing. It doesn't necessarily have to have a wall. You can turn around and spread loam and sod that steep bank, and naturally the sod would hold if you stake it up, because there are cases around the city where banks have been staked up with sod. * * *"

Skelly also stated that after the beginning of construction of defendant's wall the land up to that time had no chance to slip as winter had not come and there had been no rain. He testified: "Q. Did you notice any abrupt change in the slope from the Winn property? A. There was a sharp 9-foot drop. Prior to that there wasn't any drop; there was a gradual slope. Q. But the slope, 6 feet in a 6-foot horizontal slope, was inadequate to maintain support? A. It was if it was left that way. Q. But if nothing was done to it, the land would have subsided, in your opinion? A. Yes."

In redirect examination the witness in addition stated: "* * * With this excavation, if it wasn't rectified,—we built one wall,—it wasn't sod or something, over the winter Mr. Winn might have lost his porch, the rear end stoop, because the land would probably have eroded * * *." He further testified: "Q. Mr. Skelly, how long would it be, in your opinion, before the pre-existing 6 by 6 slope began to subside due to erosion, weather and what not? A. It all depended upon the type of winter we had. If we had a lot of rain like we had last winter why you would have quite a bit of erosion. Q. Well, how long a period of time would that be? A. It would be the following spring, following March probably."

After consideration we are of the opinion that in the circumstances the trial justice must have overlooked or misconceived pertinent evidence in reaching his decision and that on the whole record it was error for him to find for the defendant. It is our conclusion that on the issue of liability the evidence supports the plaintiff's contentions.

The plaintiff's ninth exception is sustained, and the defendant may appear before this court on November 22, 1954, to show cause, if any she has, why the case should not be remitted to the superior court for a new trial on the question of damages only.

## On Motion for Reargument.

### DECEMBER 3, 1954.

Per Curiam. In accordance with leave granted in our opinion filed November 12, 1954 counsel for the defendant appeared to show cause why judgment on the issue of liability should not be entered for the plaintiff and the case be remitted to the superior court for a new trial on the question of damages only.

The defendant's counsel now points out more particularly and cogently than in the original argument certain testimony which could have a bearing on the meaning to be

given the superior court's decision and also would be of important assistance to a trial justice in determining where the fair preponderance of evidence lies.

Since in any event the issue of damages is to be tried again, we are of the opinion that for the reasons set forth by the defendant's counsel it is in the interest of justice that the case be not remitted for entry of judgment as indicated in our opinion but that it be remitted to the superior court for a new trial on all issues.

*Aram K. Berberian,* for plaintiff.

*Robinson, Robinson & Adelson, Melvin A. Chernick, Leonard Decof,* for defendant.

